UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| STAR ACQUISITION, LLC | ) | |
| | ) | 11-64688-mgd |
| Debtor | ) | |
| | ) | |

**EMERGENCY MOTION OF DEBTOR FOR (1) ORDER
AUTHORIZING USE OF CASH COLLATERAL
TO AVOID IMMEDIATE AND IRREPARABLE HARM, AND FOR
(2) FINAL ORDER AUTHORIZING CASH COLLATERAL USE**

COMES NOW Star Acquisition, LLC, debtor and debtor in possession in the above-styled chapter 11 case (the "Debtor"), by and through the undersigned counsel, and hereby files this Motion (the "Motion") for the entry and approval of an order, pursuant to Sections 105 and 363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure, authorizing the Debtor's use of cash collateral on an emergency basis to operate its business in accordance with the proposed budget (the "Budget") attached hereto as Exhibit "A" and the proposed Interim Order (as defined below) attached as Exhibit "B." In support hereof, the Debtor shows as follows:

**CONCISE STATEMENT OF RELIEF SOUGHT**

| | |
|---|---|
| **Relief Sought:** | **Authority to use cash collateral on an interim basis and, pending a final hearing, final authority to use cash collateral** |
| **Entity with Interest In Cash Collateral:** | **SunTrust Bank (the "Lender")** |
| **Purposes for the Use of Cash Collateral:** | **Payment of operational expenses and administrative expenses in accordance with the Budget attached as Exhibit "A"** |
| **Duration:** | **Through the date the Court holds a hearing on final approval (See, Paragraph 11 of the Motion; Paragraph 2 of the Proposed Order)** |

| | |
|---|---|
| **Adequate Protection:** | A lien on all property of the Debtor, excluding any property on which another creditor has a prior perfected security interest and Avoidance Actions (Paragraph 17 of the Motion; Paragraph 9 of the Proposed Order). |
| | Payments to reduce the Revolver in accordance with the Budget (Paragraph 17 of the Motion; Paragraph 8 of the Order) |
| **Waiver of Surcharge** | Any right to surcharge collateral under section 506(c) or any other Section is waived (Paragraph 11 of the Order) |
| **Other Provisions:** | The consent to use cash collateral is conditioned upon the Debtor receiving a $200,000 DIP loan from Star Funding, LLC (the "DIP Lender") (Paragraph 11 of the Motion; Paragraph H of the Order) |
| | The Debtor is required to promptly seek approval of a sale of its envelope manufacturing equipment (Paragraph 4 of the Order) |
| | The Lender is to receive payments from the liquidation of Star Envelope, LLC (Paragraph 16 of the Proposed Order) |
| **Events of Default:** | Establishment of Events of Default including (i) the conversion or dismissal of the case; (ii) the appointment of a trustee or an examiner with expanded powers in the case; (iii) the Debtor's failure to maintain casualty insurance insuring the Pre-Petition Collateral; (iv) the Debtor's failure duly and punctually to perform any of its obligations under this Order; (v) the Order is amended, vacated, stayed, reversed or otherwise modified without the prior written consent of Agent; (vi) the Lender does not receive proceeds totaling at least $400,000 from the liquidation of the Star Envelope assets by July 31, 2011; (vii) the Lender does not receive proceeds totaling at least $400,000 from the sale of the Debtor's envelope manufacturing equipment by August 31, 2011; (viii) the Revolver debt exceeds the amount set forth in the Budget line item "Revolver due SunTrust" by more than ten percent (10%); (ix) the Revolver debt exceeds the maximum availability under the ABL Formula; or (x) the DIP Lender does not fund the $200,000 loan by May 23, 2011. (Paragraph 16 of the Proposed Order) |

**Introduction**

1.      On May 16, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, modified, or supplemented, the "Bankruptcy Code"). In accordance with Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business as debtor in possession.

2.      No creditors' committee has been appointed in this case.  In addition, no trustee or examiner has been appointed.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      The statutory predicates for the relief requested herein are §§ 105(a) and 363(b) of the Bankruptcy Code.

**Background**

5.      The Debtor is a in the business of manufacturing file folders, envelope, and related paper products. The Debtor is located at 3010 Spring Industrial Drive, Powder Springs, Georgia (the "Facility").

6.      The Debtor has three (3) subsidiaries: (i) Star Envelope, LLC ("Star Envelope"), which operated out of Baltimore, Maryland, (ii) On Demand Envelope, LLC ("On Demand"), which operates out of Miami, Florida, and (iii) Star Filing Mexico S. De RL DE CV, which operates out of Mexico. Star Envelope has ceased operations and is in the process of liquidating its assets.

7.      The Debtor is indebted to SunTrust Bank (the "Lender"), pursuant to (i) a Commercial Note, Note 34, in the original principal amount of $3,500,000 (the "Revolver"), and (ii) Commercial Note, Note 42,  in the original principal amount of $1,740,000  (the "Equipment Loan")(collectively, the "Pre-Petition Loan Documents"). The formula for advances on the Revolver is (x) 75% for receivables of the Debtor, Star Envelope, and On Demand under 90 days old, and (y) 50% for eligible inventory of the Debtor, Star Envelope, and On Demand, capped at a maximum advance of $1,000,000 at any time (the "ABL Formula"). The amount due under the Revolver as of the Petition Date is approximately $2,526,000, plus applicable and reasonable fees and charges pursuant to Section 506(b) of the Bankruptcy Code. The amount due under the Equipment Loan as of the Petition Date is approximately $1,440,000, plus applicable and reasonable fees and charges pursuant to Section 506(b) of the Bankruptcy Code. The Debtor is also indebted to the Lender in the approximate amount of $42,692 pursuant to an ISDA Swap Agreement with the Lender. All of the foregoing indebtedness is hereinafter called the "Pre-Petition Debt."

8.      As security for the payment of all Pre-Petition Debt, the Debtor granted to the Lender security interests in and liens upon all such Debtor's property, including but not limited to all of such Debtor's accounts, inventory, furniture, fixtures, equipment, goods, deposit accounts, instruments, documents, commercial tort claims, letter of credit rights, investment property, chattel paper, and general intangibles (the "Pre-Petition Collateral"). The Debtor stipulates that the Lender has a perfected security interest in the Pre-Petition Collateral pursuant to UCC-1 financing statements recorded at  0332010-02366,  0332010-02367,  0332010-02368,  and 0332010-02369.

9.     Star Envelope and On Demand have guaranteed the Pre-Petition Debt and granted a security interest in substantially all of their assets to secure such guaranties. The Debtor contemplates that Star Envelope and On Demand will make payments to be applied to the Revolver and the Equipment Loan during the Interim Period (as defined below).

10.     The Debtor, subject to Bankruptcy Court approval, will liquidate the envelope manufacturing equipment at the Facility.

11.     The Debtor has filed a "Motion for Authority to Incur Junior Secured Debt and Request for Preliminary Hearing" requesting authority to borrow $200,000 from Star Funding, LLC (the "DIP Lender"), and to grant a lien upon and security interest in the Debtor's assets, junior to the liens of the Lender and the liens of any other party with a prior perfected security interest in the Debtor's assets as of the Petition Date. The Lender's consent to the use of Cash Collateral is expressly conditioned upon the DIP Lender advancing to the Debtor $200,000 no later than May 23, 2011.

12.     The Debtor has opened the following DIP accounts with the Lender: Operation account #xxxxxxxx20592 and Payroll account #xxxxxxxx20600 (the "DIP Accounts"). There is an existing account maintained at the Lender, account #xxxxxxxx72240 (the "Sweep Account") that was swept daily, with the funds being applied to the Revolver.

### Relief Requested

### Use of Cash Collateral on an Interim Basis in Accordance with the Budget

13.     By this Motion, the Debtor seeks interim authorization to use cash collateral in accordance with the Budget pending a final hearing (hereinafter, the period for which interim authority is sought is referred to as the "Interim Period"). The Debtor proposes to use cash collateral for general and administrative expenses as set forth in the Budget. The expenses

incurred by the Debtor and for which cash collateral will be used will all be incurred in the normal and ordinary course of the Debtors' businesses. A proposed "Interim Order Authorizing Limited Use of Cash Collateral and Providing Adequate Protection" (the "Proposed Order") is attached hereto as Exhibit "B."

14.    Bankruptcy Code Section 363(c)(2) provides that a debtor in possession may not use cash collateral unless an entity that has an interest in such cash collateral consents or the Court approves the use, conditioned on provision of adequate protection. Section 363(o) provides that at a hearing on the use of cash collateral, the entity asserting an interest in the cash collateral has the burden of proof on the issue of the validity, priority, or extent of such interest, and the debtor in possession has the burden of proof on the issue of adequate protection. Rule 4001(b)(2) provides that the Court may not hold a final hearing on a motion to use cash collateral earlier than 14 days after service of the motion, but may authorize the use of cash collateral prior to a final hearing as necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

15.    The Debtor requests authority to use cash collateral for the purpose of avoiding immediate and irreparable harm to the estate. The authority to continue using cash collateral should continue until the Court rules on the Debtor's request following a final hearing.

16.    The Debtor recognizes that the Lender is entitled to adequate protection within the meaning of 11 U.S.C. §§ 361 and 363.  The Debtor acknowledges that, in consideration of the Debtor's use of the Lender's cash collateral, the Lender is entitled to adequate protection of its security interest in and lien on the cash collateral.

17.    The Debtor has agreed to provide such adequate protection pursuant to the terms hereof in the form of a post petition replacement lien, as follows: In connection with the Debtor's

use of cash collateral during the Interim Period and to provide the Lender adequate protection in respect of the Debtor's use of such cash collateral, the Debtor agrees, subject to approval of this Court, (i) to grant the Lender *nunc pro tunc* as of the commencement of the Chapter 11 case, a lien pursuant to 11 U.S.C. §361(2) on and in all of the Debtor's property (subject to prior perfected security interests), and (ii) to pay down the Revolver in accordance with the Budget.

### Use of Existing Bank Accounts

18.     The Debtor further requests authority to maintain the Sweep Account at the Lender for the purpose of making payments to reduce the Revolver.

### Final Authority for Use of Cash Collateral

19.     The Debtor further requests that the Court schedule a final hearing on cash collateral use and, following such hearing, enter a final order authorizing cash collateral use. At such hearing, the Court will consider any additional adequate protection requested by the Lender or agreed upon by the Debtor.

### Basis for Relief

20.     The Debtor has agreed to provide adequate protection as contemplated by Section 363(c)(2) of the Bankruptcy Code and hereby seek the Court's approval thereof. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev. Group Inc.,* 16 F.3d 552, 564 (3rd Cir. 1994) (*citing In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

21.    Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained. *Swedeland*, 16 F.3d at 564 (*citing O'Connor*, 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy"). Courts have noted that "the essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation." *In re Arriens*, 25 B.R. 79, 81 (Bankr. D.Or. 1982). The focus of the requirement is to protect a secured creditor from diminution in value during the use period. *See In re Kain*, 86 B.R 506, 513 (Bankr. W.D. Mich.1988); *In re Becker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

22.    The Debtor's requested use of cash collateral as set forth in the Budget and the protections proposed to be afforded to the Lender in the Proposed Order, in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection."

23.    The Bankruptcy Code expressly provides that "granting a replacement lien is a means of adequate protection". 11 U.S.C. § 361(2). Granting replacement liens provides ample adequate protection of the secured creditor's interest in cash collateral. *See e.g. In re O'Connor*, 808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas. Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984). The Debtor will adequately protect the Lender's interests in cash collateral by providing liens on the Debtor's personal property (including postpetition personal property, but excluding property subject to prior perfected security interests and the vehicles) to the extent the Debtor's use of cash collateral results in a postpetition decrease in the value securing the Lender's claims.

24.     The Bankruptcy Court also expressly provides that periodic cash payments constitute adequate protection. 11 U.S.C. § 361(1). The payments are intended to protect the affected entity against a decrease in the value of its collateral, which would directly affect the entity's interest in the collateral. *See, Traveler Ins. Co. v. American AgCredit Corp. (In re Blehm Land & Cattle Co.*), 859 F.2d 137 (10th Cir. 1988). Here, the Debtor's proposed payments to the Lender will protect the Lender's interest.

25.     The Debtor believes that use of cash collateral (a) during the Interim Period in order to avoid irreparable harm pursuant to the terms and conditions set forth above, and (b) on a final basis following a final hearing on cash collateral use, is fair and reasonable and adequately protects the Lender. The combination of (i) the Debtor's ability to preserve the value of its assets with the use of cash collateral, (ii) the postpetition liens granted to the Lender, and (iii) the periodic payments, adequately protects the Lender's secured position under Section 361. For all of the reasons stated above, approval of the Motion is proper.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (A) authorizing the Debtor (i) to use cash collateral pursuant to the terms set forth above and in accordance with the Budget during the Interim Period, (ii) to grant the liens set forth above in connection with the use of the cash collateral, and (B) setting a final hearing hereon at least fourteen (14) days after the entry of an interim order on this Motion, and (C) for such other and further relief as the Court deems just and proper.

Dated: May 18, 2011

Respectfully submitted,

LAMBERTH, CIFELLI, STOKES
ELLIS & NASON, P.A.
Attorneys for Debtor


By: */s/ G. Frank Nason, IV*
G. Frank Nason, IV
Georgia Bar No. 535160

3343 Peachtree Road NE, Suite 550
Atlanta, GA 30326-1022
(404) 262-7373

**EXHIBIT "A"**

**BUDGET**

**Presentation Sheet**

| | 5/16-5/20 | 5/23-5/27 | 5/30-6/3 | 6/6-6/10 | 6/13-6/17 | 6/20-6/24 | 6/27-7/1 | 7/4-7/8 | 7/11-7/15 | 7/18-7/22 | 7/25-7/29 | 8/1-8/5 | 8/8-8/12 | 8/15-8/19 | 8/22-8/26 | 8/29-9/2 | 9/5-9/9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Flow Ongoing Operations – Atlanta** | | | | | | | | | | | | | | | | | |
| Beginning Cash | 0 | 193,517 | 150,716 | 45,882 | 48,378 | 83,166 | 145,349 | 191,618 | 186,802 | 232,675 | 196,834 | 183,670 | 159,167 | 177,520 | 208,207 | 231,770 | 230,018 |
| Cash Collections | 273,517 | 285,428 | 207,832 | 222,030 | 211,948 | 293,343 | 223,430 | 224,903 | 227,135 | 169,420 | 170,097 | 162,087 | 161,380 | 161,380 | 197,715 | 197,715 | 191,770 |
| Total Cash Available for Use | 273,517 | 478,944 | 358,548 | 267,911 | 260,326 | 380,509 | 368,779 | 416,521 | 413,937 | 402,095 | 366,931 | 346,650 | 302,194 | 320,547 | 375,235 | 405,922 | 429,485 |
| Cash Expenses (see detail on "AP Summary") | 80,000 | 328,228 | 312,666 | 219,534 | 177,160 | 235,160 | 177,160 | 229,719 | 181,261 | 205,261 | 183,261 | 183,261 | 143,027 | 143,027 | 167,027 | 174,152 | 199,467 |
| Ending Cash | 193,517 | 150,716 | 45,882 | 48,378 | 83,166 | 145,349 | 191,618 | 186,802 | 232,675 | 196,834 | 183,670 | 159,167 | 177,520 | 208,207 | 231,770 | 230,018 | 230,018 |
| **Cash Flow Ongoing Operations – On Demand** | | | | | | | | | | | | | | | | | |
| Beginning Cash | 0 | 578 | 25,574 | 21,571 | 22,413 | 22,910 | 1,868 | 2,110 | 2,175 | 63,034 | 81,547 | 135,581 | 214,212 | 324,943 | 434,310 | 551,457 | 576,520 |
| Cash Collections | 67,574 | 95,470 | 88,370 | 76,625 | 67,071 | 111,204 | 91,351 | 87,793 | 89,903 | 145,530 | 101,976 | 162,087 | 171,811 | 171,811 | 171,811 | 161,709 | 107,598 |
| Total Cash Available for Use | 67,574 | 96,048 | 113,944 | 98,196 | 89,484 | 134,115 | 93,219 | 89,903 | 92,078 | 147,705 | 165,010 | 253,453 | 366,023 | 496,754 | 548,256 | 630,091 | 659,054 |
| Cash Expenses (see detail on "AP Summary") | 66,996 | 70,474 | 67,373 | 75,783 | 66,574 | 107,246 | 91,109 | 87,728 | 84,671 | 83,463 | 83,053 | 93,179 | 61,079 | 62,444 | 69,874 | 78,635 | 82,534 |
| Cash Principal Payments | | | 25,000 | | | 25,000 | | | | | 25,000 | | | 25,000 | | | |
| Ending Cash | 578 | 25,574 | 21,571 | 22,413 | 22,910 | 1,868 | 2,110 | 2,175 | 87,728 | 84,671 | 83,463 | 83,053 | 93,179 | 61,079 | 62,444 | 69,874 | 576,520 |
| **Cash Flow Ongoing Operations – Combined** | | | | | | | | | | | | | | | | | |
| Beginning Cash | 0 | 194,095 | 176,290 | 67,452 | 70,791 | 108,076 | 147,217 | 193,728 | 188,977 | 295,710 | 278,381 | 319,251 | 355,026 | 484,110 | 611,830 | 670,590 | 783,227 |
| Cash Collections | 194,095 | 176,290 | 296,202 | 279,019 | 298,655 | 406,348 | 314,781 | 312,696 | 372,665 | 271,396 | 332,134 | 333,191 | 333,191 | 333,191 | 311,661 | 365,424 | 305,313 |
| Total Cash Available for Use | 194,095 | 176,290 | 472,492 | 346,108 | 349,810 | 514,604 | 461,997 | 506,624 | 561,642 | 567,106 | 610,565 | 652,441 | 688,217 | 817,301 | 923,491 | 1,036,014 | 1,088,539 |
| Cash Expenses (see detail on "AP Summary") | 146,996 | 398,702 | 380,039 | 295,317 | 241,734 | 342,407 | 268,269 | 317,447 | 265,932 | 288,724 | 266,315 | 297,415 | 204,107 | 205,471 | 227,591 | 252,787 | 282,001 |
| Cash Proceeds from Atlanta (liquidation) | 578 | | | | | | | | | | | | | | | | |
| Ending Cash | 194,095 | 176,290 | 67,452 | 70,791 | 108,076 | 147,217 | 193,728 | 188,977 | 295,710 | 278,381 | 319,251 | 355,026 | 484,110 | 611,830 | 670,590 | 783,227 | 806,538 |
| **Liquidation Proceeds** | | | | | | | | | | | | | | | | | |
| (draw down line) | 0 | | | | | | | | | | | | | | | | |
| Cash Collections from Baltimore | | 15,000 | 30,000 | 50,000 | 50,000 | 30,000 | 270,000 | 270,000 | 25,000 | 20,000 | 40,000 | 500,000 | | | | | |
| Cash Collections | | 30,000 | | | | 20,000 | | 25,000 | 25,000 | 20,000 | 40,000 | | | | 26,441 | | |
| Cash Proceeds from On Demand | | | | | | 30,000 | 270,000 | 25,000 | | | 40,000 | 40,000 | | | | | |
| Cash Proceeds from Atlanta (liquidation) | | | | | | | | | 25,000 | | | | | | 25,000 | | |
| Total Proceeds | 25,000 | 25,000 | 40,000 | 50,000 | 50,000 | 50,000 | 270,000 | 25,000 | 25,000 | 20,000 | 40,000 | 500,000 | 0 | 0 | 20,000 | 0 | 0 |
| **Calculation of M&E Loan** | | | | | | | | | | | | | | | | | |
| Beginning M&E Loan | 1,440,217 | 1,440,217 | 1,405,217 | 1,375,217 | 1,325,217 | 1,305,217 | 1,255,217 | 985,217 | 960,217 | 935,217 | 915,217 | 855,217 | 355,217 | 355,217 | 355,217 | 355,217 | 335,217 |
| M&E Loan Paydown | 15,000 | 25,970 | 30,000 | 50,000 | 20,000 | 30,000 | 270,000 | 25,000 | 25,000 | 20,000 | 40,000 | 500,000 | | | 25,441 | | |
| Regular Principal Paydown | 0 | | | | | 26,126 | | | | | 26,283 | | | | | | |
| Ending M&E Loan | 1,440,217 | 1,405,217 | 1,375,217 | 1,325,217 | 1,305,217 | 1,255,217 | 985,217 | 960,217 | 935,217 | 915,217 | 855,217 | 355,217 | 355,217 | 355,217 | 335,217 | 335,217 | 335,217 |
| **Summary of Borrowing Base (For BB calculations ONLY)** | | | | | | | | | | | | | | | | | |
| Borrowing Base (all borrowers) | 2,632,859 | 2,661,475 | 2,753,614 | 2,750,239 | 2,761,592 | 2,677,298 | 2,661,830 | 2,666,283 | 2,585,759 | 2,601,187 | 2,571,024 | 2,491,825 | 2,412,626 | 2,333,426 | 2,270,374 | 2,167,000 | 2,151,318 |
| Theoretical revolver (all borrowers) | 2,430,169 | 2,236,074 | 2,253,879 | 2,337,716 | 2,334,378 | 2,297,093 | 2,333,952 | 2,186,441 | 2,191,192 | 2,084,459 | 2,101,788 | 2,035,918 | 2,000,142 | 1,871,059 | 1,743,339 | 1,659,579 | 1,546,942 |
| Net Cash availability from BB | 202,690 | 425,402 | 499,735 | 412,523 | 427,214 | 380,205 | 428,878 | 459,842 | 394,567 | 516,728 | 469,237 | 455,907 | 412,483 | 462,388 | 527,035 | 507,421 | 604,375 |
| Cash for the period | 341,091 | 380,897 | 296,202 | 279,019 | 312,696 | 372,663 | 271,396 | 332,134 | 333,191 | 333,191 | 333,191 | 333,191 | 333,191 | 333,191 | 311,661 | 365,424 | 305,313 |
| Expense for the period | 146,996 | 398,702 | 380,039 | 295,317 | 241,734 | 342,407 | 268,269 | 317,447 | 265,932 | 288,724 | 266,315 | 297,415 | 204,107 | 205,471 | 227,591 | 252,787 | 282,001 |
| Ending M&E Loan | 1,440,217 | 1,405,217 | 1,375,217 | 1,325,217 | 1,305,217 | 1,255,217 | 985,217 | 960,217 | 935,217 | 915,217 | 855,217 | 355,217 | 355,217 | 355,217 | 335,217 | 335,217 | 335,217 |
| **Revolver due to SunTrust** | 2,356,074 | 2,253,579 | 2,337,716 | 2,334,578 | 2,297,093 | 2,232,552 | 2,186,441 | 2,191,192 | 2,084,459 | 2,101,788 | 2,055,918 | 2,000,142 | 1,871,059 | 1,743,339 | 1,659,579 | 1,546,942 | 1,523,651 |

**EXHIBIT "B"**

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| STAR ACQUISITION, LLC | ) | |
| | ) | 11-64688-mgd |
| Debtor | ) | |
| | ) | |

### INTERIM ORDER AUTHORIZING LIMITED USE
### OF CASH COLLATERAL BY DEBTORS IN POSSESSION AND PROVIDING
### ADEQUATE PROTECTION TO SUNTRUST BANK

This matter came on for a hearing before the Court on May 19, 2011 (the "Preliminary Hearing"), on the "Emergency Motion of Debtor for (1) Order Authorizing Use of Cash Collateral on an Emergency Basis to Avoid Immediate and Irreparable Harm, and (2) Final Order Authorizing Cash Collateral Use" filed by Star Acquisition, LLC, debtor and debtor in possession (the "Debtor"), pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) (the "Cash Collateral Motion") to use certain cash that is subject to security interests and liens in favor of SunTrust Bank (the "Lender"), and therefore constitutes cash collateral within the meaning of Section 363 of the Bankruptcy Code.

Having considered the matters set forth in the Cash Collateral Motion and all representations of counsel at the Interim Hearing, the Court makes the following findings of fact and conclusions of law applicable to the use of cash collateral by Debtor and the adequate

protection to the Lender (to the extent any findings of fact constitutes conclusion of law, they are adopted as such, and *vice versa*):

THE COURT HEREBY FINDS:

A.    On May 16, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, modified, or supplemented, the "Bankruptcy Code"). In accordance with Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business as debtor in possession.

B.    The Debtor manufactures envelopes and folders at its location at 3010 Spring Industrial Drive, Powder Springs, Georgia 30127 (the "Facility").

C.    The Debtor alleges that it has three (3) subsidiaries: (i) Star Envelope, LLC ("Star Envelope"), which operated out of Baltimore, Maryland, (ii) On Demand Envelope, LLC ("On Demand"), which operates out of Miami, Florida, and (iii) Star Filing Mexico S. De RL DE CV, which operates out of Mexico. Star Envelope has ceased operations and is in the process of liquidating its assets.

D.    The Debtor alleges that on April 26, 2010, the Debtor entered into a Security Agreement with the Lender, granting a security interest to secure (i) a Commercial Note, Note 34, in the original principal amount of $3,500,000 (the "Revolver"), and (ii) Commercial Note, Note 42,  in the original principal amount of $1,740,000  (the "Equipment Loan")(collectively, the "Pre-Petition Loan Documents"). The Debtor alleges that the formula for advances on the Revolver is (x) 75% for receivables of the Debtor, Star Envelope, and On Demand under 90 days old, and (y) 50% for eligible inventory of the Debtor, Star Envelope, and On Demand, capped at a maximum advance of $1,000,000 at any time (the "ABL Formula"). The Debtor alleges that the amount due under the Revolver as of the Petition Date is approximately $2,526,000, plus applicable and reasonable fees and charges pursuant to Section 506(b) of the Bankruptcy Code. The Debtor also alleges that the amount due under the Equipment Loan as of the Petition Date is approximately $1,440,000, plus applicable and reasonable fees and charges pursuant to Section 506(b) of the Bankruptcy Code. The Debtor further alleges that it is indebted to the Lender in the approximate amount of $42,692 pursuant to an ISDA Swap Agreement with the Lender. All of the foregoing indebtedness is hereinafter called the "Pre-Petition Debt."

E.    As security for the payment of all Pre-Petition Debt, the Debtor alleges that it granted to the Lender security interests in and liens upon all such Debtor's property, including but not limited to all of such Debtor's accounts, inventory, furniture, fixtures, equipment, goods, deposit accounts, instruments, documents, commercial tort claims, letter of credit rights, investment property, chattel paper, and general intangibles (all such personal property, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, being hereinafter referred to as the "Pre-Petition Collateral").

F.    The Debtor further alleges that Star Envelope and On Demand have guaranteed the Pre-Petition Debt and granted a security interest in substantially all of their assets to secure such guaranties. The Debtor contemplates that Star Envelope and On Demand will make

2

payments to be applied to the Revolver and the Equipment Loan during the Cash Collateral Period.

G.      The Debtor alleges that it has opened the following DIP accounts with the Lender: Operation account #xxxxxxxx20592 and Payroll account #xxxxxxxx20600 (the "DIP Accounts"). The Debtor also alleges that there is an account maintained at the Lender, account #xxxxxxxx72240 (the "Sweep Account") that is swept daily, with the funds being applied to the Revolver.

H.      The Debtor has filed a "Motion for Authority to Incur Junior Secured Debt and Request for Preliminary Hearing" requesting authority to borrow $200,000 from Star Funding, LLC (the "DIP Lender"), and to grant a lien upon and security interest in the Debtor's assets, junior to the liens of the Lender and the liens of any other party with a prior perfected security interest in the Debtor's assets as of the Petition Date. The Lender's consent to the use of Cash Collateral as set forth herein is expressly conditioned upon the DIP Lender advancing to the Debtor $200,000 no later than May 23, 2011.

I.      An immediate and ongoing need exists for the Debtor to use cash collateral to continue the operations of the business as a debtor in possession under Chapter 11 of the Bankruptcy Code and to preserve the value of Debtor's assets as a "going concern." The Debtor proposes to use cash collateral during the Cash Collateral Period (as defined below) in the amounts and for the purposes specified in the budget prepared by Debtor and annexed hereto as Exhibit A (the "Budget").

J.      The Debtor's counsel has certified that a copy of the Cash Collateral Motion, together with notice of the Interim Hearing, has been served by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the United States Trustee, the Lender, the creditors listed on the list filed with the Court pursuant to Bankruptcy Rule 1007(d), and all creditors known to claim any liens upon any of the Cash Collateral. The Court finds that notice of the Cash Collateral Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

K.      Good cause has been shown for the entry of this Order and authorization for Debtor to use cash collateral pending the final hearing on the Cash Collateral Motion pursuant to Bankruptcy Rule 4001(b) (the "Final Hearing"). The Debtor's need for the use of cash collateral is immediate and critical, and entry of this Order will minimize disruption of Debtor's business and serve to preserve the assets of Debtor's estate and is in the best interest of Debtor, its creditors and estate.

L.      The Debtor stipulates that the Lender is entitled to adequate protection of its interests in the Pre-Petition Collateral.

M.      The Debtor and the Lender acknowledge and stipulate that there is no right or authority to borrow against the Revolver and the Debtor only has authority to use Cash Collateral (as defined below) in accordance with this Order.

N.     The Debtor stipulates that the Lender has a perfected security interest in the Pre-Petition Collateral pursuant to UCC-1 financing statements recorded at 0332010-02366, 0332010-02367, 0332010-02368, and 0332010-02369.

O.     Based on the record presented at the Interim Hearing, it appears that the terms of the Debtor's use of cash collateral, as embodied in this Order, are fair and reasonable.

P.     This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Cash Collateral Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     Disposition of Motion.  The Cash Collateral Motion is hereby GRANTED as hereinafter set forth.

2.     Limited Cash Collateral Use Authorized.  During the Cash Collateral Period (as defined below), the Debtor shall be authorized to use Cash Collateral (as defined below) only for Permitted Purposes (as defined below).  As used herein:

(a)     the term "Cash Collateral Period" shall mean the period commencing May 19, 2011, and ending on the sooner to occur of (a) _____ __.m. (prevailing Eastern time) on June 15, 2011, or (b) the occurrence of an Event of Default (as defined in paragraph 16 below);

(b)     the term "Cash Collateral" shall mean and include (i) proceeds of Pre-Petition Collateral consisting of pre-petition accounts receivable arising from Debtor's sale prior to the Petition Date of inventory in the ordinary course of business or of post-petition accounts receivable arising from Debtor's sale after the Petition Date of pre-petition inventory in the ordinary course of business, (ii) proceeds derived from the post-petition sale in the ordinary course of business of inventory acquired by Debtor after the Petition Date, (iii) all proceeds derived from the post-petition sale of any other Collateral whether in the ordinary course of business or outside the ordinary course of business, subject to the Court's approval after notice and a hearing, and (iv) all proceeds from all assets of the Debtor.

(c)     the term "Permitted Purposes" shall mean use by the Debtor of Cash Collateral to pay expenses shown on the Budget and limited to amounts and line items shown on the Budget, provided that the aggregate amount of Cash Collateral used as of any date during the Cash Collateral period may not exceed the aggregate amount of weekly expenses shown on the Budget multiplied by the number of weeks elapsed from the commencement of the Cash Collateral Period through such date and provided further that no Cash Collateral may be used to pay any pre-petition claim against the Debtor (other than Bankruptcy Court approved payroll, payroll related taxes, employee benefits, and trust fund taxes) other than payments to the Lender as provided in Paragraph .

3. <u>Collection of Accounts Receivable</u>. The Debtor shall diligently attempt to collect all of its pre-petition and post-petition accounts receivable and all other rights to the payment of money and shall cause all such collections (including all Cash Collateral) to be remitted by its customers and other account obligors.

4. <u>Equipment Sale</u>. The Debtor, subject to Bankruptcy Court approval, shall undertake to liquidate by auction substantially all equipment located at the Facility employed in the manufacturing of envelopes. The net proceeds (after ordinary and reasonable costs and expenses of sale, including auctioneer commissions) will be paid to the Lender.

5. <u>Cash Collateral Subject to Lender's Liens</u>. Until expended by Debtors, all Cash Collateral shall remain subject to the liens and claims of the Lender under the Pre-Petition Loan Documents and this Order.

6. <u>Termination of Authority to Use Cash Collateral</u>. After the expiration of the Cash Collateral Period or upon an Event of Default as set forth in Paragraph 16 below, the Debtor shall forthwith cease to use any Cash Collateral except to the extent otherwise allowed by order of the Court after notice and a hearing. In no event shall the Lender be obligated to monitor or otherwise be responsible for the Debtor's use of Cash Collateral in conformity with this Order or Debtor's compliance with this Order.

7. <u>No Authorization for Sales Outside Ordinary Course of Business</u>. Nothing in this Order shall be deemed to authorize the Debtor to sell or otherwise dispose of any of its pre-petition or post-petition assets other than sales of inventory in the ordinary course of business unless previously approved by Bankruptcy Court order, or to use any cash or other proceeds of any assets of the Debtor except the use of Cash Collateral strictly in conformity with the terms and conditions of this Order.

8. <u>Payment on the Revolver</u>. The Debtor shall make payments on the Revolver so that the Revolver debt does not exceed the amount set forth in the Budget line item "Revolver due SunTrust" by more than ten percent (10%)

9. <u>Adequate Protection Liens Granted to Lender</u>. As partial adequate protection of its interests, the Lender is hereby granted liens ("Adequate Protection Liens") upon all property of the Debtor, wherever located and whether created, acquired or arising prior to or after the Petition Date, including, without limitation, all of the Debtor's accounts, inventory, furniture, fixtures, equipment, goods, deposit accounts, instruments, documents, commercial tort claims, letter of credit rights, investment property, chattel paper, and general intangibles, together with all proceeds of the foregoing items, but excluding any property subject to prior perfected security interests. The Adequate Protection Liens are granted as adequate protection of any liens and security interests of the Lender in any property of the Debtor (including, without limitation, the Pre-Petition Collateral). The Adequate Protection Liens shall be deemed automatically valid and perfected upon entry of this Order without the necessity of the execution by the Debtor. The Adequate Protection Liens shall not extend to the proceeds of any avoidance actions received by Debtor or the estate pursuant to Sections 544, 547, 548, 549 or 550 of the Bankruptcy Code ("Avoidance Actions"). Notwithstanding anything herein to the contrary, the liens granted to the

Lender hereunder in connection with the use of Collateral and cash collateral shall be subject and junior to the fees of the Office of the United States Trustee pursuant to 28 U.S.C. §1930.

10.     _Waiver of Surcharge_. The Debtor expressly waives, abandons, and releases any right to surcharge pursuant to Section 506(c) or any other section of the Bankruptcy Code any of the property to which the Adequate Protection Liens attach.

11.     _Superpriority Claim_. To the extent permitted by applicable law, the Lender shall be entitled to an administrative priority claim under Section 507(b) of the Bankruptcy Code in the amount, if any, by which the protections afforded herein for Debtor's use or disposition of any of its property (including Cash Collateral) that is subject to the Lender's liens prove to be inadequate. Notwithstanding anything to the contrary herein, with respect to the proceeds of Avoidance Actions, any Section 507(b) claim to which Agent is entitled shall stand in equal priority with the claims of all administrative claimants.

12.     _Repayment of DIP Lender_. So long as the Debtor is not in default hereunder, the Debtor may make monthly interest payments to the DIP Lender, but shall not be authorized to make any principal payments to the DIP Lender unless (i) the Lender is paid in full, or (ii) the Lender otherwise expressly consents in writing to such payment.

13.     _Bank Accounts_. The Debtor is authorized to maintain the DIP Accounts as debtor in possession accounts so long as the Bank complies with the requirements of the Office of the United States Trustee for approved depositories, and provided that the Debtor complies with the Bank's requirements for opening and maintaining such accounts. The Debtor is further authorized to maintain the Sweep Account as a zero balance account for the purpose of making payments to the Lender as authorized herein. The Debtor shall otherwise comply with all U.S. Trustee requirements, including all requirements regarding business forms and stationery.

14.     _Reservation of Rights_. Nothing contained in this Order shall be deemed to constitute a finding with respect to the adequacy of the protection of the interests of the Lender in the Pre-Petition Collateral or a waiver by the Lender of its right to seek other or additional relief from the Court, including, without limitation, the right to seek additional protection, to move for relief from the automatic stay, to seek a dismissal or conversion of this Chapter 11 case or to seek the appointment of a trustee or examiner.

15.     _Events of Default_. The occurrence or existence of any one or more of the following events or conditions shall constitute an "Event of Default": (i) the conversion or dismissal of the case; (ii) the appointment of a trustee or an examiner with expanded powers in the case; (iii) the Debtor's failure to maintain casualty insurance insuring the Pre-Petition Collateral; (iv) the Debtor's failure duly and punctually to perform any of its obligations under this Order; (v) this Order is amended, vacated, stayed, reversed or otherwise modified without the prior written consent of Agent; (vi) the Lender does not receive proceeds totaling at least $400,000 from the liquidation of the Star Envelope assets by July 31, 2011; (vii) the Lender does not receive proceeds totaling at least $400,000 from the sale of the Debtor's envelope manufacturing equipment by August 31, 2011; (viii) the Revolver debt exceeds the amount set forth in the Budget line item "Revolver due SunTrust" by more than ten percent (10%); (ix) the Revolver debt exceeds the maximum availability under the ABL Formula; (x) the DIP Lender

does not fund the $200,000 loan by May 23, 2011; or (xi) all net proceeds from the liquidation of Star Envelope (after ordinary and reasonable costs and expenses of sale, including auctioneer commissions) are not paid to the Lender.

16.     Remedies upon Event of Default.  Upon the occurrence of an Event of Default, the Lender or its counsel may file under this Court's CM/ECF filing system an affidavit of default specifying such Event of Default.  If the Debtor disputes that an Event of Default has in fact occurred, the Debtor may file a contravening affidavit within 5 calendar days of the date of filing of the affidavit of default. If no such contravening affidavit is timely filed, the Debtor shall forthwith cease any further use of Cash Collateral and the Court may enter an order prohibiting further use of Cash Collateral (but the Debtor shall be prohibited from further use whether or not such an order is entered).  If the Debtor timely files a contravening affidavit, the Court shall set an expedited hearing.

17.     Other Obligations of Debtors Under Loan Documents Remain in Effect.  The Debtor is authorized and directed to comply with all provisions contained in any of the Pre-Petition Loan Documents relating to the maintenance and continuation in effect of any insurance policies, whether property, casualty, liability, credit or otherwise.

18.     Survival of Provisions of This Order.  The provisions of this Order and any action taken pursuant to the terms hereof shall survive the entry of any order that may be entered dismissing the case or converting the cases to a case under Chapter 7 of the Bankruptcy Code, and all of the terms and conditions of this Order as well as the liens and security interests granted pursuant hereto shall continue in this or in any superseding case under the Bankruptcy Code, and such liens and security interests shall retain their priorities provided by this Order until satisfied and discharged.

19.     Notice of Final Hearing.  Promptly after the entry of this Order, within the time specified by local rules, the Debtor shall serve a copy of this Order to the U.S. Trustee, the Lender, the twenty (20) largest unsecured creditors, any creditors who have heretofore filed a request with the Court for notices, and each secured and unsecured creditor and shall file a certificate of service regarding same with the clerk of the Court. The Final Hearing shall be held at _____ .m., on _____, **2011**, at Courtroom **1201,** United States Bankruptcy Court, 75 Spring Street, SW, Atlanta, Georgia. If at or after the Final Hearing the Court modifies any of the provisions of this Order, then such modifications shall not affect the rights and remedies granted to the Lender pursuant to this Order, all of which rights and remedies shall remain in full force and effect with respect to Cash Collateral used by the Debtor prior to the effective date of such modifications.

** END OF DOCUMENT**

**Preparer's Signature on Next Page**

**Prepared and presented by:**
LAMBERTH, CIFELLI, STOKES

ELLIS & NASON, P.A.
Counsel for Debtor


By: /s/ G. Frank Nason, IV
        G. Frank Nason, IV
        Georgia Bar No. 535160
3343 Peachtree Road NE, Suite 550
Atlanta, GA 30326-1022
(404) 262-7373




**Identification of parties to be served:**

G. Frank Nason, IV, Lamberth, Cifelli, Stokes, Ellis & Nason, P.A., 3343 Peachtree Road NE, Suite 550, Atlanta, GA 30326

Office of U.S. Trustee, 362 Richard Russell Bldg., 75 Spring Street SW, Atlanta, GA 30303

Frank W. DeBorde, Morris, Manning & Martin, LLP, 3343 Peachtree Road NE, Suite 1600, Atlanta, Georgia 30326

**Exhibit A**

**(Budget)**

| Presentation Sheet | 5/16-5/20 | 5/23-5/27 | 5/30-6/3 | 6/6-6/10 | 6/13-6/17 | 6/20-6/24 | 6/27-7/1 | 7/4-7/8 | 7/11-7/15 | 7/18-7/22 | 7/25-7/29 | 8/1-8/5 | 8/8-8/12 | 8/15-8/19 | 8/22-8/26 | 8/29-9/2 | 9/5-9/9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Flow Ongoing Operations** | | | | | | | | | | | | | | | | | |
| **Atlanta:** | | | | | | | | | | | | | | | | | |
| **On Demand:** | | | | | | | | | | | | | | | | | |
| Beginning Cash | 0 | 193,517 | 150,716 | 45,882 | 48,378 | 83,166 | 145,349 | 191,618 | 186,802 | 232,675 | 196,834 | 183,670 | 140,814 | 159,167 | 177,520 | 208,307 | 231,770 |
| Collections | 273,517 | 285,438 | 207,832 | 222,030 | 211,948 | 295,243 | 233,430 | 224,903 | 227,135 | 169,420 | 170,097 | 183,070 | 140,814 | 159,167 | 197,715 | 197,715 | 197,715 |
| Total Cash Collections | 273,517 | 478,944 | 355,548 | 267,911 | 260,326 | 380,509 | 368,779 | 416,521 | 413,937 | 402,095 | 366,931 | 345,050 | 302,194 | 320,547 | 375,235 | 405,922 | 429,485 |
| Total Cash Available for Use | 273,517 | 338,228 | 312,666 | 219,534 | 175,160 | 235,160 | 171,160 | 229,719 | 181,261 | 205,261 | 183,261 | 204,236 | 143,027 | 143,027 | 167,027 | 174,152 | 199,467 |
| Cash Expenses | 80,000 | | | | | | | | | | | | | | | | |
| Total Cash Available for Use (see detail on "A2" Summary) | 80,000 | | | | | | | | | | | | | | | | |
| Ending Cash | 193,517 | 150,716 | 45,882 | 48,378 | 83,166 | 145,349 | 191,618 | 186,802 | 232,675 | 196,834 | 183,670 | 140,814 | 159,167 | 177,520 | 208,307 | 231,770 | 230,018 |
| **Cash Flow Ongoing Operations** | | | | | | | | | | | | | | | | | |
| **On Demand** | | | | | | | | | | | | | | | | | |
| Beginning Cash | 578 | 25,574 | 21,571 | 22,413 | 22,910 | 1,868 | 2,110 | 2,175 | 63,034 | 81,547 | 135,581 | 214,212 | 324,943 | 434,310 | 462,383 | 551,457 | 576,520 |
| Collections | 0 | 578 | 25,574 | 21,571 | 22,413 | 22,910 | 1,868 | 2,110 | 2,175 | 63,034 | 81,547 | 135,581 | 214,212 | 324,943 | 434,310 | 462,383 | 551,457 |
| Total Cash Collections | 67,574 | 95,470 | 88,370 | 76,625 | 79,019 | 108,076 | 147,217 | 193,728 | 188,977 | 63,034 | 81,547 | 135,581 | 214,212 | 324,943 | 434,310 | 462,383 | 551,457 |
| Total Cash Available for Use | 341,091 | 296,202 | 113,944 | 98,196 | 93,196 | 406,548 | 314,781 | 312,696 | 372,665 | 101,976 | 162,087 | 171,811 | 171,811 | 171,811 | 311,661 | 167,709 | 107,598 |
| Cash Expenses | 146,996 | 574,992 | 472,492 | 366,108 | 349,810 | 514,624 | 461,997 | 506,424 | 561,642 | 271,396 | 332,184 | 333,191 | 386,023 | 496,754 | 923,697 | 548,256 | 667,106 |
| Total Principal Payments | 66,996 | 70,474 | 380,039 | 295,317 | 241,734 | 342,407 | 317,447 | 265,932 | 265,932 | 288,724 | 266,315 | 297,415 | 688,217 | 817,061 | 1,036,014 | 630,091 | 659,054 |
| Total (detail in "A2 Summary") | 67,373 | $ 70,474 | | | | | | | | | | | | | | | |
| Ending Cash | 194,095 | 176,290 | 67,452 | 70,791 | 108,076 | 147,217 | 193,728 | 188,977 | 232,675 | 278,381 | 319,251 | 355,026 | 324,943 | 434,310 | 670,590 | 789,227 | 806,538 |
| **Cash Flow Ongoing Operations** | | | | | | | | | | | | | | | | | |
| **Fixed** | | | | | | | | | | | | | | | | | |
| **Collection Proceeds:** | | | | | | | | | | | | | | | | | |
| (down line) | | | | | | | | | | | | | | | | | |
| Cash Proceeds from Baltimore | 0 | 15,000 | 30,000 | 50,000 | 20,000 | 30,000 | 270,000 | 25,000 | 25,000 | 20,000 | 40,000 | 500,000 | 355,217 | 355,217 | 355,217 | 335,217 | 335,217 |
| Cash Proceeds On Demand | | | | | | | | | | | | | | | | | |
| Cash Proceeds from Atlanta (liquidation) | 0 | 15,000 | 30,000 | 50,000 | 20,000 | 30,000 | 270,000 | 25,000 | 25,000 | 20,000 | 40,000 | 500,000 | 0 | 0 | 20,000 | 0 | 0 |
| Total Proceeds from Atlanta (revolver) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 26,441 | 0 | 0 |
| Cash Expenses | | | | | | | | | | | | | | | | | |
| Total Principal Payments | | | | | | | | | | | | | | | | | |
| Total Cash Proceeds | 578 | 25,574 | 21,571 | 22,413 | 22,910 | 1,868 | 2,110 | 2,175 | 63,034 | 81,547 | 135,581 | 214,212 | 324,943 | 434,310 | 670,590 | 789,227 | 806,538 |
| **Calculation of M&E Loan** | | | | | | | | | | | | | | | | | |
| **based for BB calculations ONLY:** | | | | | | | | | | | | | | | | | |
| Beginning M&E Loan | 1,440,217 | 1,440,217 | 1,405,217 | 1,375,217 | 1,325,217 | 1,305,217 | 1,255,217 | 985,217 | 960,217 | 935,217 | 915,217 | 855,217 | 355,217 | 355,217 | 355,217 | 335,217 | 335,217 |
| M&E Loan Paydown | | 15,000 | 30,000 | 50,000 | 20,000 | 30,000 | 270,000 | 25,000 | 25,000 | 20,000 | 40,000 | 40,000 | 500,000 | 0 | 0 | 0 | 0 |
| Regular Principal Paydown | | 25,970 | | | | | | | | | | 26,283 | | | 20,000 | | |
| Ending M&E Loan | 1,440,217 | 1,405,217 | 1,375,217 | 1,325,217 | 1,305,217 | 1,255,217 | 985,217 | 960,217 | 935,217 | 915,217 | 855,217 | 355,217 | 355,217 | 355,217 | 335,217 | 335,217 | 335,217 |
| **Summary of Borrowing Base** | | | | | | | | | | | | | | | | | |
| **for BB calculations ONLY:** | | | | | | | | | | | | | | | | | |
| Borrowing Base (all borrowers) | 2,632,859 | 2,661,475 | 2,753,614 | 2,750,239 | 2,761,592 | 2,677,298 | 2,661,830 | 2,666,283 | 2,585,759 | 2,601,187 | 2,571,024 | 2,491,825 | 2,412,626 | 2,313,426 | 2,270,374 | 2,167,000 | 2,151,818 |
| Theoretical revolver (all borrowers) | 2,430,169 | 2,256,074 | 2,253,879 | 2,317,716 | 2,314,378 | 2,297,093 | 2,232,952 | 2,186,441 | 2,191,192 | 2,084,459 | 2,101,788 | 2,035,918 | 2,000,142 | 1,871,059 | 1,743,339 | 1,659,579 | 1,546,942 |
| Net Cash availability from BB | 202,690 | 425,402 | 499,735 | 412,523 | 427,214 | 380,205 | 428,878 | 459,842 | 394,567 | 516,728 | 469,237 | 455,907 | 412,483 | 462,368 | 527,035 | 507,421 | 604,875 |
| Cash for the period | 341,091 | 380,897 | 296,202 | 298,655 | 279,019 | 406,548 | 314,781 | 312,696 | 372,665 | 271,396 | 332,184 | 333,191 | 333,191 | 333,191 | 311,661 | 355,424 | 305,313 |
| Expense for the period | 146,996 | 398,702 | 380,039 | 295,317 | 241,734 | 342,407 | 268,269 | 317,447 | 265,932 | 288,724 | 266,315 | 297,415 | 204,107 | 205,471 | 227,901 | 252,787 | 282,001 |
| **Revolver due to SunTrust** | 2,256,074 | 2,253,879 | 2,337,716 | 2,314,378 | 2,297,093 | 2,232,552 | 2,186,441 | 2,191,192 | 2,084,459 | 2,101,788 | 2,035,918 | 2,000,142 | 1,871,059 | 1,743,339 | 1,659,579 | 1,546,942 | 1,523,631 |

## CERTIFICATE OF SERVICE

This is to certify that I, G. Frank Nason, IV, have this date served a true and correct copy of the foregoing EMERGENCY MOTION OF DEBTOR FOR (1) ORDER AUTHORIZING USE OF CASH COLLATERAL TO AVOID IMMEDIATE AND IRREPARABLE HARM, AND FOR (2) FINAL ORDER AUTHORIZING CASH COLLATERAL USE by electronic mail to the parties listed below. An additional Certificate of Service will be submitted setting forth additional service parties.

Martin P. Ochs
Office of the United States Trustee
362 Richard Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303
martin.p.ochs@usdoj.gov

Frank W. DeBorde
Morris, Manning & Martin, LLP
3343 Peachtree Road NE, Suite 1600
Atlanta, Georgia 30326
fwd@mmmlaw.com

This 18th day of May, 2011

/s/ G. Frank Nason, IV
G. Frank Nason, IV