UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| STAR ACQUISITIONS, LLC | ) | |
| | ) | 11-64688-mgd |
| Debtor | ) | |
| | ) | |

**AMENDMED AND RESTATED MOTION FOR AUTHORITY TO INCUR JUNIOR
SECURED DEBT AND REQUEST FOR EMERGENCY HEARING**

NOW COMES, Star Acquisitions, LLC (the "Debtor"), pursuant to 11 U.S.C. § 364 and

Bankruptcy Rule 4001(c), and makes and files this Amended and Restated to Motion for

Authority to Incur Junior Secured Debt and Request for Emergency Hearing (the "Motion"). In

support of the Motion, the Debtor respectfully shows the Court as follows.

**CONCISE STATEMENT OF RELIEF SOUGHT**

**Relief Sought:**              **Authority to incur junior secured debt**

**Lender:**                     **Star Funding, LLC**

**Amount:**                     **$300,000**

**Interest Rate:**              **8%**

**Entity with Senior Lien:**    **SunTrust Bank (the "Bank")**

**Purposes for the Use**        **Payment of budgeted shortfalls**

**Duration:**                   **The balance is due and payable on the earlier of (i) the effective
                                date of any plan confirmed by the Bankruptcy Court, (ii) the
                                consummation of a sale of all or substantially all of the assets
                                and business of Borrower, or (iii) December 31, 2011.**

**Other Provisions:**           **So long as the Debtor is not in default under the cash collateral
                                order providing adequate protection to the Bank, the Debtor
                                may make monthly interest payments to the DIP Lender, but
                                will not be authorized to make any principal payments to the
                                DIP Lender unless (i) the Bank is paid in full, or (ii) the Bankr**

otherwise expressly consents in writing to such payment. Any payments received in contravention of the Order approving this loan will be held in trust for the benefit of the Borrower's bankruptcy estate and the Bank.

**Adequate Protection:**      **A junior secured lien on all personal property of the Debtor behind any existing perfected lien (Paragraph 15 of the Motion).**

## Introduction

1.      On May 16, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, modified, or supplemented, the "Bankruptcy Code"). In accordance with Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business as debtor in possession.

2.      No creditors' committee has been appointed in this case.  In addition, no trustee or examiner has been appointed.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      The statutory predicates for the relief requested herein are §§ 105(a) and 363(b) of the Bankruptcy Code.

## Background

5.      The Debtor is a in the business of manufacturing file folders, envelope, and related paper products. The Debtor is located at 3010 Spring Industrial Drive, Powder Springs, Georgia.

6.      The Debtor has three (3) subsidiaries: (i) Star Envelope, LLC ("Star Envelope"), which operated out of Baltimore, Maryland, (ii) On Demand Envelope, LLC ("On Demand"),

349166.doc

which operates out of Miami, Florida, and (iii) Star Filing Mexico S. De RL DE CV ("Star Filing"), which operates out of Mexico. Star Envelope has ceased operations and is in the process of liquidating its assets.

7.      The Debtor is indebted to SunTrust Bank (the "Bank"), pursuant to (i) a Commercial Note, Note 34, in the original principal amount of $3,500,000 (the "Revolver"), and (ii) Commercial Note, Note 42,  in the original principal amount of $1,740,000  (the "Equipment Loan")(collectively, the "Pre-Petition Loan Documents"). The formula for advances on the Revolver is (x) 75% for receivables of the Debtor, Star Envelope, and On Demand under 90 days old, and (y) 50% for eligible inventory of the Debtor, Star Envelope, and On Demand, capped at a maximum advance of $1,000,000 at any time (the "ABL Formula"). The amount due under the Revolver as of the Petition Date is approximately $2,526,000, plus applicable and reasonable fees and charges pursuant to Section 506(b) of the Bankruptcy Code. The amount due under the Equipment Loan as of the Petition Date is approximately $1,440,000, plus applicable and reasonable fees and charges pursuant to Section 506(b) of the Bankruptcy Code. The Debtor is also indebted to the Bank in the approximate amount of $42,692 pursuant to an ISDA Swap Agreement with the Bank. All of the foregoing indebtedness is hereinafter called the "Pre-Petition Debt."

8.      As security for the payment of all Pre-Petition Debt, the Debtor granted to the Bank security interests in and liens upon all such Debtor's property, including but not limited to all of such Debtor's accounts, inventory, furniture, fixtures, equipment, goods, deposit accounts, instruments, documents, commercial tort claims, letter of credit rights, investment property, chattel paper, and general intangibles (the "Pre-Petition Collateral"). The Debtor stipulates that the Bank has a perfected security interest in the Pre-Petition Collateral pursuant to UCC-1

349166.doc

financing statements recorded at 0332010-02366, 0332010-02367, 0332010-02368, and 0332010-02369.

9.      Star Envelope and On Demand have guaranteed the Pre-Petition Debt and granted a security interest in substantially all of their assets to secure such guaranties. The Debtor contemplates that Star Envelope and On Demand will make payments to be applied to the Revolver and the Equipment Loan. The Debtor, subject to Bankruptcy Court approval, will liquidate the envelope manufacturing equipment at the Facility.

10.     The Debtor filed "Emergency Motion of Debtor for (1) Order Authorizing Use of Cash Collateral on an Emergency Basis to Avoid Immediate and Irreparable Harm, and (2) Final Order Authorizing Cash Collateral Use" pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) (the "Cash Collateral Motion") to use certain cash that is subject to security interests and liens in favor of the Bank, and therefore constitutes cash collateral within the meaning of Section 363 of the Bankruptcy Code. Attached to the Cash Collateral Motion was a budget (the "Original Budget") setting forth anticipated income and expenses. On May 19, 2011, the Court entered an Order approving the use of cash collateral on an interim basis pending a final hearing on June 13, 2011.

11.     Because there were projected shortfalls in the early stages of the case as set forth in the Original Budget. Star Funding, LLC (the "DIP Lender") was willing to advance $200,000 by May 23, 2011, in order to cover such shortfalls. Interest on the loan was eight percent (8%). The DIP Lender is 100% owned by Texas Star Envelope, Inc., which owns 71% of the Debtor's membership interests. Javier Fernandez is the president of both the Debtor and the DIP Lender. Fernando Toca and Federico Toca are also officers of both the Debtor and the DIP Lender. On

349166.doc

May 19, 2011, the Court entered an Order authorizing the Debtor to borrow $200,000 from the

DIP Lender. The DIP Lender advanced the $200,000 as authorized by the Court.

12.     The Debtor's operations were shuttered for a period of time when this case was

commenced. As a result, collections have been slower than anticipated and the Debtor finds itself

in a cash crunch. Attached hereto as Exhibit "A" is a revised budget (the "Budget") based upon

the current forecast and accounting for reduced collections. As seen on the Budget, the Debtor

will suffer cash shortfalls in the near term, including the week of June 13, 2011.

13.     The DIP Lender is willing to advance an additional $300,000 in order to cover the

shortfalls. The proposed Note is attached hereto as Exhibit "B."

14.     The Bank's continued consent to the use of cash collateral is expressly

conditioned upon the DIP Lender advancing to the Debtor the amounts needed to cover the

anticipated shortfalls under the Budget.

15.     The additional post-petition loans from the DIP Lender will be secured by a

security interest in and lien on all assets of the Debtor.  The security interest and liens granted to

the DIP Lender would be junior and subordinate only to the valid, enforceable and properly

perfected liens and security interests of the Bank and any other valid, enforceable and properly

perfected security interests that existed as of the Petition Date. The liens do not attach to Chapter

5 avoidance actions. Additionally, Star Filing may be required to guaranty to loans. Star Filing is

a subsidiary of the Debtor, but is not liable on the debts to SunTrust.

16.     So long as the Debtor is not in default under the cash collateral order providing

adequate protection to the Bank, the Debtor may make monthly interest payments to the DIP

Lender, but will not be authorized to make any principal payments to the DIP Lender unless (i)

the Bank is paid in full, or (ii) the Bank otherwise expressly consents in writing to such payment.

349166.doc

Any payments received in contravention of this Order will be held in trust for the benefit of the estate and the Bank.

## Relief Requested

17.    In order to continue operation of its business as debtor in possession under Chapter 11 of the Bankruptcy Code and to minimize the disruption of the Debtor as a "going concern," to preserve the value of the assets, the Debtor requests that the Court authorize the Debtor to incur an additional $300,000 of indebtedness needed to fund the shortfalls in the Budget. The Debtor is unable to obtain funds in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code.

18.    The final hearing on the initial $200,000 loan is scheduled for June 13, 2011. The Debtor has an immediate need for additional financing prior to the time a final hearing may be held on this Motion in order to prevent immediate and irreparable harm to the estate. Accordingly, the Debtor requests that, pending a final hearing on this Motion, the Debtor be authorized to obtain loans and other extensions of credit, to be used solely for the purposes and to the extent set forth in the Budget.

## Basis for Relief

19.    The financing sought by the Debtor is necessary to minimize the disruption of the Debtor's business and operations as a going concern, to preserve the assets of the Debtor's estate, and is in the best interest of the Debtor, its creditors, and its estate.  The terms of the proposed financing are fair and reasonable.  The Debtor submits that the DIP Lender has acted in

6                                                               349166.doc

good faith, as required by Section 364(e) of the Bankruptcy Code, in connection with the proposed financing.

20.      Bankruptcy Rule 4001 controls the procedure for obtaining the relief requested herein.  Bankruptcy Rule 4001 specifically requires fourteen (14) days notice to the U. S. Trustee and the list of Twenty Largest Unsecured Creditors, but permits the Court to conduct a preliminary hearing before the expiration of the 14-day notice period.  Accordingly, pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests that this Court conduct an emergency hearing before the expiration of the fourteen days and authorize the Debtor to obtain junior secured credit to the extent necessary to avoid immediate and irreparable harm to the estate of the Debtor pending a final hearing.

WHEREFORE, the Debtor respectfully requests that the Court enter an order authorizing the Debtor to incur additional junior secured debt as set forth herein, including on an emergency basis, and for such other and further relief as the Court deems just and proper.

Dated: June 10, 2011

> Respectfully submitted,
>
> LAMBERTH, CIFELLI, STOKES
> ELLIS & NASON, P.A.
> Attorneys for Debtor
>
>
> By:  */s/ G. Frank Nason, IV*
>      G. Frank Nason, IV
>      Georgia Bar No. 535160

3343 Peachtree Road NE, Suite 550
Atlanta, GA 30326-1022
(404) 262-7373

349166.doc

**EXHIBIT "A"**

**BUDGET**

8                                                        349166.doc

**Star Acquisition, LLC and related entities**
**Atlanta**
**(Star Acquisition, LLC)**

| | | 5/30-6/3 | 6/6-6/10 | 6/13-6/17 | 6/20-6/24 | 6/27-7/1 | 7/4-7/8 | 7/11-7/15 | 7/18-7/22 | 7/25-7/29 | 8/1-8/5 | 8/8-8/12 | 8/15-8/19 | 8/22-8/26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Weekly Budget** | | | | | | | | | | | | | |
| (1) | Sales | 85,884 | 205,000 | 214,000 | 374,000 | 300,000 | 225,000 | 225,000 | 225,000 | 225,000 | 225,000 | 225,000 | 225,000 | 225,000 |
| (2) | Cash for Direct Expenses | 82,910 | 124,000 | 125,000 | 130,000 | 130,000 | 132,500 | 157,500 | 157,500 | 157,500 | 157,500 | 157,500 | 157,500 | 157,500 |
| | Overhead Expenses | | | | | | | | | | | | | |
| | Building Rent | - | 23,125 | - | - | - | 23,125 | - | - | - | 23,125 | - | - | - |
| | Sales Salaries | 11,134 | 12,407 | 12,407 | 12,407 | 12,407 | 13,000 | 13,000 | 13,000 | 13,000 | 9,926 | 9,926 | 9,926 | 9,926 |
| | Payroll Taxes & Benefits | 842 | 4,094 | 4,094 | 4,094 | 4,094 | 5,118 | 5,118 | 5,118 | 5,118 | 3,276 | 3,276 | 3,276 | 3,276 |
| | Outside Commissions | | 4,275 | 4,275 | 4,275 | 4,275 | 3,409 | 3,409 | 3,409 | 3,409 | 2,764 | 2,764 | 2,764 | 2,764 |
| | Admin Salaries | 2,956 | 3,043 | 3,043 | 3,043 | 3,043 | 3,804 | 3,804 | 3,804 | 3,804 | 2,434 | 2,434 | 2,434 | 2,434 |
| | Admin Payroll Taxes & Benefits | 215 | 1,256 | 1,256 | 1,256 | 1,256 | 1,462 | 1,462 | 1,462 | 1,462 | 1,005 | 1,005 | 1,005 | 1,005 |
| | Telephone | - | - | - | 4,000 | - | - | - | 4,000 | - | - | - | - | 4,000 |
| | Property Tax Expense | - | - | - | - | - | - | - | - | - | 12,000 | - | - | - |
| | Insurance Expenses | - | - | - | - | - | 20,000 | - | - | - | - | - | - | - |
| | Bank Fees & Charges | 2,597 | - | - | - | - | 1,229 | 1,229 | 1,229 | 1,229 | 983 | 983 | 983 | 983 |
| | Interest on DIP | - | 1,333 | - | - | - | 1,333 | - | - | - | 1,333 | - | - | - |
| | Utility Deposits | - | - | - | 8,000 | - | - | - | - | - | - | - | - | - |
| | Trustee fees | - | - | - | - | - | - | - | - | - | 9,750 | - | - | - |
| | Other bankruptcy fees | - | - | 3,075 | - | - | 20,000 | - | - | - | 15,000 | - | - | - |
| | Other Expenses | 1,475 | 3,683 | 3,683 | 3,683 | 5,683 | 4,433 | 4,433 | 4,433 | 6,433 | 2,946 | 2,946 | 2,946 | 2,946 |
| (3) | Total Overhead Expenses | 19,219 | 53,217 | 31,834 | 40,759 | 30,759 | 96,912 | 32,454 | 36,454 | 34,454 | 84,543 | 23,334 | 23,334 | 27,334 |
| (4a) | Bank - Revolver loan interest | | | | 10,000 | | | | 10,000 | | | | | 10,000 |
| (4b) | Bank - M&E loan interest | - | - | - | 10,000 | - | - | - | 10,000 | - | - | - | - | 10,000 |
| (5) | Total Cash Out = (2) + (3) + (4a)+ (4b) | 102,129 | 177,217 | 156,834 | 190,759 | 160,759 | 229,412 | 189,954 | 213,954 | 191,954 | 242,043 | 180,834 | 180,834 | 204,834 |
| | **Cash Flow = (7) + (7) -(5)** | (16,245) | 28,493 | (21,898) | 29,310 | (10,759) | (43,528) | 15,046 | 46 | 182,046 | 57,957 | 44,166 | 44,166 | 20,166 |
| | **Cash Position** | | | | | | | | | | | | | |
| (6) | Beginning Cash | 37,784 | 21,539 | 50,032 | 28,133 | 57,443 | 46,684 | 3,156 | 18,202 | 18,248 | 200,294 | 258,251 | 302,417 | 346,583 |
| (7) | Add: Collections | 85,884 | 105,710 | 134,936 | 120,069 | 150,000 | 85,884 | 205,000 | 214,000 | 374,000 | 300,000 | 225,000 | 225,000 | 225,000 |
| (7) | Add: Cash Infusion | | 100,000 | | 100,000 | | 100,000 | | | | | | | |
| (8) | Less: Total Cash Out (5) | 102,129 | 177,217 | 156,834 | 190,759 | 160,759 | 229,412 | 189,954 | 213,954 | 191,954 | 242,043 | 180,834 | 180,834 | 204,834 |
| (9) | Ending Cash | 21,539 | 50,032 | 28,133 | 57,443 | 46,684 | 3,156 | 18,202 | 18,248 | 200,294 | 258,251 | 302,417 | 346,583 | 366,748 |
| | **Collateral Position** | | | | | | | | | | | | | |
| (10) | Eligible A/R | 1,125,402 | 1,224,692 | 1,303,756 | 1,557,687 | 1,707,687 | 1,846,803 | 1,866,803 | 1,877,803 | 1,728,803 | 1,653,803 | 1,653,803 | 1,653,803 | 1,653,803 |
| | 0.75 | | | | | | | | | | | | | |
| (11) | Borrowing Base A/R | 844,052 | 918,519 | 977,817 | 1,168,265 | 1,280,765 | 1,385,102 | 1,400,102 | 1,408,352 | 1,296,602 | 1,240,352 | 1,240,352 | 1,240,352 | 1,240,352 |

| 8/29-9/2 | 9/5-9/9 | 9/12-9/16 | 9/19-9/23 | 9/26-9/30 | 10/3-10/7 | 10/10-10/14 | 10/17-10/21 | 10/24-10/28 | 10/31-11/4 | 11/7-11/11 | 11/14-11/18 | 11/21-11/25 | 11/28-12/2 | 12/5-12/9 | 12/12-12/16 | 12/19-12/23 | 12/26-12/30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 225,000 | 225,000 | 225,000 | 225,000 | 225,001 | 225,002 | 225,003 | 225,004 | 225,005 | 225,006 | 225,007 | 225,008 | 225,009 | 225,010 | 225,011 | 225,012 | 225,013 | 225,014 |
| 157,500 | 157,501 | 157,501 | 157,502 | 157,503 | 157,504 | 157,504 | 157,505 | 157,506 | 157,506 | 157,507 | 157,508 | 157,508 | 157,509 | 157,510 | 157,510 | 157,510 | 157,510 |
| 23,125 | - | - | - | - | 23,125 | - | - | - | 23,125 | - | - | - | 23,125 | - | - | - | - |
| 9,926 | 12,407 | 12,407 | 12,407 | 12,407 | 9,926 | 9,926 | 9,926 | 9,926 | 9,926 | 12,407 | 12,407 | 12,407 | 12,407 | 15,509 | 15,509 | 15,509 | 15,509 |
| 3,276 | 4,094 | 4,094 | 4,094 | 4,094 | 3,276 | 3,276 | 3,276 | 3,276 | 3,276 | 4,094 | 4,094 | 4,094 | 4,094 | 5,118 | 5,118 | 5,118 | 5,118 |
| 2,764 | 3,461 | 3,461 | 3,461 | 3,461 | 3,292 | 3,292 | 3,292 | 3,292 | 3,292 | 3,750 | 3,750 | 3,750 | 3,750 | 3,570 | 3,570 | 3,570 | 3,570 |
| 2,434 | 3,043 | 3,043 | 3,043 | 3,043 | 2,434 | 2,434 | 2,434 | 2,434 | 2,434 | 3,043 | 3,043 | 3,043 | 3,043 | 3,804 | 3,804 | 3,804 | 3,804 |
| 1,005 | 1,256 | 1,256 | 1,256 | 1,256 | 1,005 | 1,005 | 1,005 | 1,005 | 1,005 | 1,256 | 1,256 | 1,256 | 1,256 | 1,462 | 1,462 | 1,462 | 1,462 |
| - | - | - | 4,000 | - | - | - | 4,000 | - | - | - | - | - | 4,000 | - | - | 4,000 | - |
| 6,000 | - | - | - | - | - | - | 18,000 | - | - | - | - | - | - | - | - | - | - |
| - | - | - | - | - | 20,000 | - | - | - | - | - | - | - | - | 20,000 | - | - | - |
| 983 | 1,229 | 1,229 | 1,229 | 1,229 | 983 | 983 | 983 | 983 | 983 | 1,229 | 1,229 | 1,229 | 1,229 | 1,229 | 1,229 | 1,229 | 1,229 |
| - | 1,333 | - | - | - | 1,333 | - | - | - | 1,333 | - | - | - | - | 1,333 | - | - | - |
| - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - | - | - | 9,750 | - | - | - | - | - | - | - |
| - | 15,000 | - | - | - | 15,000 | - | - | - | - | 15,000 | - | - | - | 15,000 | - | - | - |
| 4,946 | 3,683 | 3,683 | 3,683 | 5,683 | 3,546 | 3,546 | 3,546 | 3,546 | 5,546 | 3,683 | 3,683 | 3,683 | 5,683 | 3,684 | 3,684 | 3,684 | 5,684 |
| 54,459 | 45,507 | 29,174 | 33,174 | 31,174 | 83,921 | 24,462 | 46,462 | 24,462 | 50,921 | 54,213 | 29,463 | 33,463 | 54,588 | 70,709 | 34,376 | 38,376 | 36,376 |
| - | - | 10,000 | - | - | - | - | - | - | 10,000 | - | - | 10,000 | - | - | - | 10,000 | - |
| - | - | - | 10,000 | - | - | - | - | 10,000 | - | - | - | 10,000 | - | - | - | 10,000 | - |
| 211,959 | 203,008 | 186,675 | 210,676 | 188,676 | 241,424 | 181,967 | 203,967 | 201,968 | 208,427 | 211,720 | 186,971 | 210,971 | 212,097 | 228,219 | 191,886 | 215,886 | 193,886 |
| **13,041** | **21,992** | **38,325** | **14,324** | **36,324** | **(16,424)** | **43,033** | **21,033** | **23,032** | **16,574** | **13,282** | **38,032** | **14,033** | **12,908** | **(3,213)** | **33,121** | **9,122** | **31,123** |
| 366,748 | 379,789 | 401,782 | 440,107 | 454,431 | 490,755 | 474,330 | 517,364 | 538,397 | 561,429 | 578,003 | 591,285 | 629,317 | 643,349 | 656,257 | 653,044 | 686,166 | 695,288 |
| 225,000 | 225,000 | 225,000 | 225,000 | 225,000 | 225,000 | 225,000 | 225,000 | 225,000 | 225,001 | 225,002 | 225,003 | 225,004 | 225,005 | 225,006 | 225,007 | 225,008 | 225,009 |
| 211,959 | 203,008 | 186,675 | 210,676 | 188,676 | 241,424 | 181,967 | 203,967 | 201,968 | 208,427 | 211,720 | 186,971 | 210,971 | 212,097 | 228,219 | 191,886 | 215,886 | 193,886 |
| 379,789 | 401,782 | 440,107 | 454,431 | 490,755 | 474,330 | 517,364 | 538,397 | 561,429 | 578,003 | 591,285 | 629,317 | 643,349 | 656,257 | 653,044 | 686,166 | 695,288 | 726,412 |
| 1,653,803 | 1,653,803 | 1,653,803 | 1,653,803 | 1,653,804 | 1,653,806 | 1,653,809 | 1,653,813 | 1,653,818 | 1,653,823 | 1,653,828 | 1,653,833 | 1,653,838 | 1,653,843 | 1,653,848 | 1,653,853 | 1,653,858 | 1,653,863 |
| 1,240,352 | 1,240,352 | 1,240,352 | 1,240,352 | 1,240,353 | 1,240,355 | 1,240,357 | 1,240,360 | 1,240,364 | 1,240,367 | 1,240,371 | 1,240,375 | 1,240,379 | 1,240,382 | 1,240,386 | 1,240,390 | 1,240,394 | 1,240,397 |

**EXHIBIT "B"**

**NOTE**

349166.doc

**NOTE**

Principal $300,000                                                                 June ___, 2011


       FOR VALUE RECEIVED, Star Acquisition, LLC (the "Borrower"), debtor and debtor in possession in Bankruptcy Case No. 11-64688-mgd, Northern District of Georgia, Atlanta Division (the "Bankruptcy Court") promises to pay to the order of Star Funding, LLC, (the "Lender"), the principal sum of Three Hundred Thousand and 00/100 Dollars ($300,000), plus interest from this date at the rate of eight percent (8%) per annum on said principal, or on so much thereof as may from time to time remain unpaid.

       **1.**     **Address for Payment.**  All payments due under this Note (the "Note") shall be payable at_____, or such other place as may be designated by written notice to Borrower from or on behalf of Lender.

       **2.**     **Payment of Principal and Interest.**  Interest shall be paid as follows:

(a)     Interest under this Note shall be computed on the basis of a 365-day year.

(b)     Subject to the terms of any Bankruptcy Court orders, interest under this Note shall be due and payable on the thirty (30) days after advance of the loan amount and shall continue to be paid on a like day of every month thereafter until paid in full.

(c)     Subject to the provisions of Paragraph D below, Principal is due and payable on the earlier of (i) the effective date of any plan confirmed by the Bankruptcy Court, (ii) the consummation of a sale of all or substantially all of the assets and business of Borrower, or (iii) December 31, 2011.

(d)     So long as the Debtor is not in default under the Cash Collateral Order, the Debtor may make monthly interest payments to the Lender, but shall not be authorized to make any principal payments to the Lender unless (i) the Lender is paid in full, or (ii) the Lender otherwise expressly consents in writing to such payment. Any payments received in contravention of the Order approving this loan shall be held in trust for the benefit of the Borrower's bankruptcy estate and SunTrust Bank.

(e)     At any time while not in default under this Note and so as not to be in violation of any Bankruptcy Court order, the Borrower may pay the outstanding balance then owing under this Note without penalty.

       **3.**     **Application of Payments.**  If at any time Lender receives from Borrower or otherwise, any amount which is less than all amounts due and payable at such time, Lender may apply that amount to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion.  Borrower agrees that neither Lender's acceptance of a payment from Borrower in an amount that is less than all amounts then due and payable nor

Lender's application of such payment shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction.

4.      **Security.**  The indebtedness of Borrower to Lender is secured by a junior lien on and security interest in the assets of Borrower, subordinate to the liens of SunTrust Bank and any other creditor with a prior perfected security interest Borrower's assets.

5.      **Acceleration.**  If Borrower defaults in making any payment due under this Note on a timely basis, the entire unpaid principal balance, any accrued interest, and all other amounts payable under this Note shall at once become due and payable, at the option of Lender, without any prior notice to Borrower.  Lender may exercise this option to accelerate regardless of any prior forbearance.

6.      **Costs and Expenses.**  Should this Note, or any part of the indebtedness evidenced hereby, be collected by or through an attorney, Borrower shall pay on demand all other expenses and costs, including expert witnesses and costs of investigation, incurred by Lender as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of this Note.

7.      **Successors and Assigns.**  This Note shall be the obligation of Borrower and will be binding upon him, and his heirs, executors, administrators, successors, and assigns.

8.      **Default Rate.**  In the case of Borrower's default and the acceleration by Lender of the amount due, all amounts outstanding under this Note will bear interest at the rate of 12.0% per annum until paid.

9.      **Forbearance.**  Any forbearance by Lender in exercising any right or remedy under this Note shall not be a waiver of or preclude the exercise of that or any other right or remedy.  The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment.  Enforcement by Lender of any security for Borrower's obligations under this Note shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right or remedy available to Lender.

10.     **Waivers.**   Borrower waives presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting on this Note.

11.     **Counting of Days.**  Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days, not Business Days.

12.     **Governing Law.**  This Note is to be construed and enforced in accordance with the  laws of the State of Georgia governing contracts entered into and performed within the State of Georgia.

**13.    Captions.**  The captions of the paragraphs of this Note are for convenience only and shall be disregarded in construing this Note.


**IN WITNESS WHEREOF**, Borrower has signed and delivered to Lender this Note under seal.


**BORROWER**:

**STAR ACQUISITION, LLC**


By:_____(Seal)
        Javier Fernandez

Title: _____

Date: _____


**NOTARY**:

                                        [SEAL]
_____

Date:_____

3

## CERTIFICATE OF SERVICE

This is to certify that I, G. Frank Nason, IV, have this date served a true and correct copy of the foregoing MOTION FOR AUTHORITY TO INCUR JUNIOR SECURED DEBT AND REQUEST FOR PRELIMINARY HEARING by electronic mail to the parties listed below. An additional Certificate of Service will be submitted setting forth additional service parties.

Martin P. Ochs
Office of the United States Trustee
362 Richard Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303
martin.p.ochs@usdoj.gov

Frank W. DeBorde
Morris, Manning & Martin, LLP
3343 Peachtree Road NE, Suite 1600
Atlanta, Georgia 30326
fwd@mmmlaw.com

This 10th day of June, 2011.

*/s/ G. Frank Nason, IV*
G. Frank Nason, IV

10

349166.doc